# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ANGELA MORGAN, individually and on
behalf of all others similarly situated,

     Plaintiffs,

  v.

ORLANDO HEALTH, INC., G&G
ORGANIZATION, LTD. d/b/a PFS GROUP,
and RMB, INC.,

     Defendants

Case No. 6:17-cv-01972-CEM-GJK

Hon. Carlos E. Mendoza

Mag. Gregory J. Kelly

## DECLARATION OF ROBERT BIGGERSTAFF
## PURSUANT TO 28 U.S.C. § 1746

I, ROBERT BIGGERSTAFF declare that:

1. I am not a party in this matter.

2. I reside in Charleston County, South Carolina.

3. I have personal knowledge of the facts and matters stated herein and can competently testify to same.

4. I prepared a report in this matter titled *Expert Report of Robert Biggerstaff* dated February 22, 2019. That report, including its exhibits, attached as Exhibit A hereto, includes a summary of the analysis I have conducted, as well as my conclusions and opinions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 22, 2019

_____
Robert Biggerstaff



Cert. No. 1360

Page 1 of 1

# EXHIBIT A

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# EXPERT REPORT OF ROBERT BIGGERSTAFF

Prepared in the matter of:

### *Morgan v. Orlando Health, Inc., et al.,*

Case No.: 6:17-cv-01972-CEM-GJK

Pending in the United States District Court
for the Middle District of Florida

February 22, 2019

**Notice**

This document is proprietary and confidential.  If you are not the intended recipient of this document, any use, dissemination, distribution, or duplication of this document or any portion of its contents is expressly prohibited. The information contained in this document may also be privileged and/or subject to nondisclosure under applicable court rules.

Copyright© 2019 Robert Biggerstaff.  All Rights Reserved.  No portion of this document or any exhibits, appendices, attachments, or any other parts hereof, in whole or in part, may be duplicated or used for any purposes by anyone other than the client for whom this document was prepared, without the express written permission of the author.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**Disclaimer**

This document many contain or describe software, algorithms, methodologies, processes, texts, businesses methods, patents, or other items that are the property of other entities and used under license or other permitted use.  Any implementation, distribution, storage, copying, or other use of such property may be subject to restrictions.

Any registered marks used within this document are the property of their respective owners.  They are used herein only for the purposes of identification and do not indicate any endorsement or approval by those owners.

Linux® is a trademark of Linus Torvalds.
Windows® is a trademark of Microsoft Corporation.
Visual FoxPro® is a trademark of Microsoft Corporation.
HylaFAX® is a trademark of Silicon Graphics, Inc.
Slackware® is a trademark of Patrick Volkerding.
ReiserFS® is a trademark of Hans Reiser and the Naming System.
FaxFacts® is a registered trademark of Copia International, Ltd.
GNU® is a trademark of the Free Software Foundation.
CAAS® and ISETTLE® are trademarks of A.B. Data, LTD.
MySQL® is a trademark of Oracle Corporation.
MariaDB® is a trademark of Monty Program Ab.
FTK® is a trademark of Access Data, Inc.
Zetafax® is a trademark of Equisys.
RightFax® is a trademark of OpenText Corp.
Openfax® is a trademark of idigital Technologies, Inc.
PROFAX® is a registered trademark of CyberData, Inc and/or Profax, Inc.
WestFax® is a trademark of WestFax Inc.
WinHex® and X-Ways Forensics® are trademarks of X-Ways Software Technology AG.
FaxTalk® is a trademark of Thought Communications, Inc.
ActFax® is a registered trademark of ActFax Communication
Encase® and EnScript® are trademarks of Guidance Software, Inc.
DB2® and RACF® are trademarks of IBM Corp.
FACS® is a trademark of Ontario Systems, LLC.
WinFax® is a trademark of Symantec Corp.
eFax® is a registered trademark of j2 Global.
Reference Legal®, SalesGenie®, and InfoUSA® are trademarks of Infogroup, Inc.
ACT!® is a trademark of Sage Software, Inc.
Goldmine® is a trademark of FrontRange Solutions USA Inc.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# Table of Contents

Executive Summary....................................................................... 4

Retention and Scope of Work. ....................................................... 4

Notice of Stipulated Confidentiality Agreement ..................................... 4

Background and Qualifications.......................................................... 5

Materials Reviewed..................................................................... 6

Analysis. .............................................................................. 7
RMB's Aggregate Call Data Analysis. ................................................ 7
RMB's Notes Data.................................................................... 7
Proposed Methodology – Determining Who Added B Flags (collector or autodialer)
.................................................................................... 10
Proposed Methodology – Verified Contact Calls, Predictive Dial Calls & Call Dates
.................................................................................... 12

Identification of Cell Phone Numbers.................................................. 13
Background.......................................................................... 13
Methodology. ....................................................................... 14

Obtaining Subscriber/User Data. ..................................................... 15
Carrier Subpoena Responses......................................................... 15
Resellers........................................................................... 15

G&G Organization Notes Data. ....................................................... 16

Conclusions........................................................................... 16

Table of Exhibits..................................................................... 18

Appendices. .......................................................................... 18

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Executive Summary

1. I found that RMB, Inc. ("RMB") made a readily-identifiable number of calls to a readily-identifiable number of unique telephone numbers which were cellular phone numbers at the time of the call(s).

2. In my opinion, using materials RMB has already produced and either detail dialer records or Notes data I understand RMB possesses, it is possible to identify each of the individual telephone numbers that received call(s) from RMB intended for another person ("wrong number" calls) and telephone numbers for which there was a cease contact or do not call ("DNC") request, including the subset calls placed after RMB received such a request.

3. In my opinion, using either detail dialer records or Notes data I understand RMB possesses, it is also possible to reliably identify the verified contact calls (i.e. prerecorded message calls) and predictive dialer calls to those telephone numbers, in addition to the date of each call.

4. In my opinion, it is administratively feasible to reliably identify the names and addresses that were associated with these telephone numbers at the time of the calls made by RMB, using common evidence.

5. Based on my experience, I can conduct a similar analysis of calls made by G & G Organization, LTD, d/b/a PFS Group ("G&G") if G&G were to produce the appropriate data as I describe in this report.

## Retention and Scope of Work

6. On September 28, 2018 Keith Keogh requested that I review materials in this case and to report my opinions regarding those materials and telephone calls and/or related information documented in those materials.

7. My compensation for this case is a flat fee of $18,000 plus $600/hr for testimony, court appearances, depositions and prep, discovery compliance, and travel.

## Notice of Stipulated Confidentiality Agreement

8. Some materials I have examined and reported on in this case have been designated as subject to the Stipulated Confidentiality Agreement dated October 3, 2018.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Background and Qualifications

9.   I obtained a Bachelors of Science in Engineering from Clemson University in 1987. I am retired from the position of Senior Support Systems Engineer, overseeing computer operations at a large production facility. I have continuously worked in the computer field for over 35 years, including work involving VLDB (Very Large DataBase) projects for the Department of Defense and large corporations. My particular expertise for most of this time has been data analysis and integration, design and implementation of large database projects, network design, forensics and data recovery, and network/computer security. This includes forensic examinations, intrusion detection, incident response, evidence preservation, integration and analysis of disparate data sources, and complex data recovery and analysis across a wide array of media, operating systems, and platforms from 1984 to present.

10.   I am a certified computer forensic examiner and a member of the International Society of Forensic Computer Examiners ("ISFCE").  I have over 30 years of experience in forensic computer examinations and data recovery.  I have been retained as a forensic computer expert in over 300 court cases and have performed hundreds of data recovery and ESI preservation assignments across many diverse platforms and filesystems.

11.   I have direct experience in the role that computer records play in claims under the Telephone Consumer Protection Act ("TCPA"), specifically with regard to analyzing those records for the purposes of identifying persons to whom telephone calls were made, the circumstances of those calls, and for purposes of class certification and class notice.

12.   As part of my work in data analysis, network and database design, and as a consultant, I have direct experience with many facets of telecom technology, including computer-based dialing and record-keeping systems, as well as technical specifications and details of call processing. This includes both evaluation and testing of many different systems, service and maintenance of such systems on a day to day basis, installation and configuration of such systems, as well as writing drivers and other software for telephony applications.

13.   I have worked with records from many different communication service providers including phone companies, call centers, and fax broadcasters, as well as reviewing testimony, forensic examinations of computers used in teleservices operations, user

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

guides, and many other documents from those entities. In doing so, I have acquired an extensive base of knowledge regarding their records and business practices.

## Materials Reviewed

14.   In addition to any materials cited elsewhere herein, I reviewed the following material in the process of producing this report:

    a.   HIPAA Confidentiality Agreement (FINAL).pdf

    b.   Confidential RMB 00045-000054 - Notes_22002863.pdf - calls made

    c.   Confidential RMB 000095-99 - Proper Use of Phone Flags.pdf

    d.   Confidential RMB 000229 - FACS Fields.xlsx

    e.   HIPAA Confidential RMB 000230 - ORH Details.xlsx

    f.   Motion to Compel RMB, Inc. to Comply with Plaintiff's First Set of Written Discovery (unredacted), including exhibits

    g.   Transcript of Deposition of James Patrick Meyers dated October 4, 2018, including exhibits

    h.   Transcript of Deposition of Jason Brodman dated October 5, 2018, including exhibits

    i.   OHI000026

    j.   OHI000103-OHI000109, Account History (redacted)

    k.   OHI000110-OHI000116, Account History (un-redacted)

    l.   G&G000007-G&G000017.pdf

    m.   G&G000018.csv

    n.   G&G000060_Header Row.xlsx

15.   I have also relied generally on orders, notices, and other promulgations of the Federal Communications Commission ("the Commission") regarding the agency's administration of the TCPA.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

16.   In preparing this report, I have also relied on knowledge and skills I acquired through my education, training, career, and experience.

## Analysis

### *RMB's Aggregate Call Data Analysis*

17.   To demonstrate the potential scope of the results from the analysis proposed if the requested data on individual calls were provided, I analyzed the contents of the data produced in the file "HIPAA Confidential RMB 000230 - ORH Details.xlsx." The results of that analysis are set out in Exhibit 1 hereto.

18.   Those data did not provide details about each telephone call, however it did contain aggregate data totaling the number of calls made to a particular phone number based on the status flag of that number at the time of the call. In particular, it tabulated the "Number of predictive dials made to [the phone number] while the flag for [that phone number] was set to an *" meaning while it was flagged as a cell number. Also tabulated was the "Number of verified contacts dials made to [the phone number] while the flag for [that phone number] was set to an *" meaning while it was flagged as a cell number.[1]

19.   This analysis found substantial numbers of calls (over 120,000) to at least 6,500 unique cell phone numbers that were flagged as a wrong number or do not call. What is not determinable from the data provided so far, is the specific dates of those calls, and how many were made to a wrong number or after a DNC notation. If the more complete data were provided, I could determine with specificity which of those calls were made to a wrong number or after DNC notation, and which of the calls fall into the applicable time frame of this litigation. But even if only 5% of those calls were made to a wrong number or after a DNC notation, during the applicable time frame of this litigation, that would still be thousands of calls.

### *RMB's Notes Data*

---

[1]. A tuple is a data analysis technique used to incorporate multiple discrete pieces of non-unique information to make a unique identifier. I understand that one OHI patient can have multiple different accounts, one for each separate hospital visit. Because some phone numbers appeared on multiple accounts, my analysis was based on a tuple which combined the phone number, last name and first name to ensure, for example, that if the same phone number and patient name appeared on two different accounts, it was only counted as one unique entity.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

20.   One threshold piece of information provided by RMB is that relevant Notes records reflecting wrong number notations, do-not-call ("DNC") requests, and related event dates are maintained by RMB in the Ontario Systems' Flexible Automated Collection System ("FACS") database product.  I am familiar with the FACS database and have worked with this product in connection other cases over the past several years.

21.   RMB's records being maintained in a FACS database indicates that, consistent with James Meyers's deposition testimony, the records are managed by a structured query language ("SQL")-based database.  This demonstrates that a variety of different software packages can easily connect to and extract records meeting any defined criteria—including searching text fields such as free-form notes.

22.   This also means that records can be exported or copied in a delimited format, such as stand-alone "comma separated values" ("CSV") files for portability, so they can be examined more conveniently at a different location or on a different system.  CSV files are the Rosetta Stone of data portability, with the CSV format finding near universal support across multiple platforms.

23.   One technique often applied based on analysis of large datasets is data reduction. Suppose a dialer database has 100 million records to search for text mentioning the words "wrong number." Such a search may take several hours on a particular unindexed system that is poorly designed and not optimized for such a search of free-form text. But that same search can take just seconds on an optimized system like I maintain for forensic analysis.

24.   The same system with 100 million records likely contains many columns of data for each record. My task (to identify records where the notes indicate a cease contact DNC request or wrong number occurred) needs only a few columns of data (primarily account number, date, phone number, and notes for my analysis.) Exporting any table (relational or not) to a CSV or other portable delimited format is a simple task supported by all conventional database platforms. RMB can simply export the necessary columns of data to one or more external CSV files, and send them to me to conduct the searches. I have received and analyzed data using this exact procedure in many cases.

25.   If RMB would simply export the appropriate columns (*i.e.* those specified in Plaintiff's pending motion to compel against RMB) to a CSV file, I could then analyze that data

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

using my forensic system. My analysis would be done using a variety of database and forensic tools on my system, thus having no impact on RMB.

26.   Having this data directly available to me for analysis would provide a population to examine for me to identify keywords in the "Notes" field that are associated with records that contain a wrong number notation, or a request to cease contact to a particular phone number. This is a data-driven analysis, meaning that I examine the data itself to identify words and phrases used in those notes, so as to develop an objective algorithm that will identify records of interest.

27.   A sample of this technique can be demonstrated using the "Notes" field already provided by RMB for the account associated with the telephone number (███) ███-2301.

| Nbr | User | Date | Time | Typ ... | Notes |
|-----|------|------|------|---------|-------|
| 427 | qc | 06/20/2017 | 08:18… | S | res ███-███-2301 IVR VERIFIED CONTACT ATTEMPTED |
| 432 | IVR | 06/20/2017 | 08:18… | S | Call from IVR. Last Step=VC - IVR placed Unattended call. |
| 433 | IVR | 06/20/2017 | 08:18… | S | Caller hung up. et IVRCALL index 3978235534 |
| 454 | JEM | 07/07/2017 | 12:08… | S | (qc) Inbound call from ███-███-2301 |
| 455 | JEM | 07/07/2017 | 12:09… | C | |
| 456 | JEM | 07/07/2017 | 12:09… | S | Debtor phone flag changed from * to B |
| 457 | JEM | 07/07/2017 | 12:09… | S | The phone flag * was removed for debtor phone number |
| 458 | JEM | 07/07/2017 | 12:09… | S | ███-███-2301 on account ███2863 because the cell owner |
| 459 | JEM | 07/07/2017 | 12:09… | S | revokes consent to call this number using an auto-dial |
| 460 | JEM | 07/07/2017 | 12:09… | S | contact platform and prerecorded messages |
| 461 | JEM | 07/07/2017 | 12:09… | S | No Contact (conts) |

28.   Using this data, I would likely construct a query of the Notes column(s) for phrases such as "wrong #", "wrong number", "No Contact", "do not call" (including spelling and proximity variations of each).[2] I would also use proximity searching to identify instances of any variations of the word "revoke" within a certain number of words of "consent," which could easily be further refined by adding additional terms to the search. This would likely produce a manageable subset of the patient/debtor records

---

2.   I understand based on the materials provided that a "B" phone flag indicates a wrong number call and a "!" flag indicates a DNC request.  I have conducted a separate analysis using the "B" and "!" flags to identify wrong number notations and cease contact requests, which is described in ¶¶ 17-19.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

that could economically be reviewed further to confirm that a request to cease contact was received.

29. This process is iterative. Because the data and analysis is empirical, once a set of initial search phrases are identified and search parameters (such as word stemming, proximity operators, etc.) defined, I would run those against the entire corpus and compare the results back to the corpus in order to refine the search criteria.  This process is repeated iteratively until the desired level of confidence in the results is obtained.

30. Another technique I have employed where repeated or revised text searches are desired is to simply create a word index for all of the text data. More complex proximity searches could also be performed (similar to proximity searches using Westlaw or Lexis).

31. To demonstrate the ease with which free-form text can be almost-instantly searched, consider services such as Westlaw and Lexis. Their "super-allfile" databases such as "allcases" and "allnews-plus" are massive databases yet the search results for words or complex phrases in the text of millions of documents are returned almost instantly. This is accomplished with well-known techniques such as word indexes.

32. I can easily load hundreds of millions text records into a word index or forensic tool and be able to do very sophisticated searches of the entre corpus of those records practically instantly.[3]  This allows me to conduct a robust analysis of the data using proximity operators, wildcards, word stemming, and other techniques.

33. By examining the entire body of those records at once, I will be able to efficiently develop an objective algorithm to identify records containing cease contact requests and wrong number calls. That objective algorithm can then be examined by anyone for its accuracy and error rate (if any) against the data.

### *Proposed Methodology – Determining Who Added B Flags (collector or autodialer)*

34. I can use the same proximity search method described above to identify wrong number records containing a "B" phone flag. Specifically, I would search for the

---

3.   Whether the size is a thousand records or a billion records is irrelevant. It is the same process and the essentially same amount of work for me.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

phrase "phone flag changed from * to B" and, if necessary, exclude stop phrases, proximity operators, or other conditions to ensure high selectivity.

35.   Using the Notes data from the RMB databases, I can further refine those search results in order to segregate the B flags entered by an RMB collector and the B flags entered by the autodialer.  RMB testified that the Notes data indicate whether the phone flag was entered by an agent versus the autodialer system and RMB can perform a SQL search for calls where the autodialer added the B flag.  I can design and execute such a search if RMB provided the Notes data about individual calls and confirmed which specific Notes table columns and values indicate whether an agent or the autodialer added the B flag.

36.   Based on the materials reviewed, it seems that whether a B flag was entered by an RMB collector or RMB's autodialer system can be determined using a combination of the "User" and "Typ…"[4] fields in the Notes data.  RMB testified that, if a person tells an RMB collector it is a wrong number, the collector marks the phone flag field with a B, and the autodialer system adds to the Notes table a note reflecting that change.[5]  RMB also testified that the "note type" field reflects whether each note was added by a collector or the autodialer system.[6]  In my opinion, this suggests that a B flag note where the "User" field identifies a person and the note "Typ…" field reflects it as being a system note indicates a wrong number notation.  I can easily construct objective search criteria to identify these instances and exclude other B flag combinations if RMB provides the necessary Notes data and identifies all "User" values that identify the dialer as opposed to an RMB agent.[7]

---

4.   The copy of these data I was provided was produced as an image file, not and electronic data file, and the image copy cuts off some of the data and field names (such as the "time" column).  I have reproduced them in this report exactly as they are represented on the imaged document provided to me, however I would need the complete data in electronic data format to conduct analysis.

5.   Meyers Dep., 114:15-115:4.

6.   Id., 83:13-19.

7.   RMB testified that the other possible meaning of a B flag is that the autodialer detects a triple tone.  Id., 115:5-12. RMB also testified that the autodialer listens for triple tones, and when it detects one, it records the result of the call but does not transfer the call to an agent. Id., 30:10-25.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

### *Proposed Methodology – Verified Contact Calls, Predictive Dial Calls & Call Dates*

37. RMB testified that the detail dialer records are purged after ninety days, but also testified that the backups of the FACS server where the detail dialer records are saved still exist to be restored.[8]  RMB also testified that the detail dialer records contain fields reflecting the date and time of each call[9], as well as fields indicating the type of each call (*i.e.* whether it was verified contact, predictive or manual).[10]  The detail dialer records will also obviously contain a field reflecting the phone number called. If RMB produces the detail dialer records, I can use the call type and phone number fields to identify the predictive dial and verified contact calls, and I can then easily refine those search results using the date and time fields to identify only the subset of phone numbers with either type of call after a DNC request.

38. In my opinion, based on a review of the sample Notes data produced by RMB, RMB000229, RMB000230 and James Meyers's testimony, I can search the missing Notes data to identify the outbound calls to telephone numbers that made a cease contact or were wrong numbers, and I can further refine that search in order to isolate the verified contact calls and predictive dial calls and identify the call dates or each.

39. RMB testified that a separate note is added to the specific account in the Notes table for each call that shows whether it was an inbound or outbound call.[11]  RMB uses the autodialer to make manual calls, verified contact (a/k/a unattended) calls, and predictive dial calls.[12]  The Notes table has a field that identifies whether it was a verified contact, predictive or manual call.[13]  This is consistent with RMB000229–230, which identifies nine different types of phone numbers and the number of manual,

---

8. Id., 28:11-29:5, 34:3-6, 34:14-25, 46:12-47:8, 48:6-13, 49:1-10, 51:19-53:10, 53:17-54:16.

9.  Id., 29:2-19.

10.  Id., 31:8-32:5, 32:24-33:14.

11.  Id., 37:9-18, 70:25-71:2, 71:8-12.

12.  Id., 31:13-23.

13.  Id., 57:6-16. It appears that it is the "note text" field which reflects the type of call. Id., 82:21-83:3.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

predictive dial and verified contact outbound calls to each, while excluding inbound calls.

40.   If RMB produces the same underlying Notes data it used to create RMB000230 and confirms the columns and values that indicate each type of call, then I can develope objective search vectors to identify within the relevant records[14] and isolate the rows associated with predictive dial and verified contact calls, just as RMB appears to have done to create RMB000230.  Using the note "Date" field, I can also easily refine each call set to identify the telephone numbers that have a predictive dial or verified contact call after any event, such as the DNC request.

41.   This is consistent with the Notes data already produced by RMB for the account associated with (▮▮▮) ▮▮-2301, a sample of which is below.

| Nbr | User | Date | Time | Typ… | Notes |
|-----|------|------|------|------|-------|
| 427 | qc | 06/20/2017 | 8:18… | S | res ▮▮-▮-2301 IVR VERIFIED CONTACT ATTEMPTED |
| 432 | IVR | 06/20/2017 | 8:18… | S | Call from IVR. Last Step=VC - IVR placed Unattended call. |
| 449 | qc | 07/07/2017 | 10:14… | S | res ▮▮-▮-2301 Answering Machine |
| 454 | JEM | 07/07/2017 | 12:08… | S | (qc) Inbound call from ▮▮-▮-2301 |

42.   I can easily search this Notes data for the phrases "VERIFIED CONTACT" and "Unattended call" in order to isolate the rows reflecting verified contact outbound calls.  Within those search results, I can use the "Date" and "Time" fields to identify rows that reflect the same call in order to eliminate any duplicative rows from the call totals.  Using the "Date" field, I can also easily refine the search results to isolate only those telephone numbers that have a predictive dial or verified contact call after the DNC request.

## Identification of Cell Phone Numbers

### *Background*

43.   RMB000230 reflects, for each account, the number of manual dials, predictive dials and verified contact dials (i.e. prerecorded message calls) to each type of phone

---

14.  Using the methodologies described in this report, I would first limit the data set to be searched to only the Notes data for telephone numbers with a wrong number, cease contact, or DNC request notation.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

number while the phone flag was set to a *, meaning RMB's cellphone scrub identified it as a cellphone number that could be called using the dialer.[15]

44.  If there were any question about the accuracy of the * flags, I could verify which phone numbers were assigned to cellular phones at the time of the call using data from Interactive Marketing Solutions, Corp (IMS) files:

  a.  Wireless Block Identifier file;

  b.  Ported Numbers file; and

  c.  Audit file.

45.  The IMS Wireless Block file contains a listing of telephone exchanges that are dedicated to wireless numbers.

46.  The Ported Number file and the Audit file contain records of numbers ported from landline to wireless and from wireless to landline, and the dates those ports were implemented (and, if removed, the date they were removed).

### *Methodology*

47.  For each phone number, I would check for a match in both the Wireless Block file and the combined Ported Number file and Audit file (collectively, the "Port file").

48.  A phone number with a match in the Wireless Block file and no hit in the Port file would indicate a cellphone number.

49.  A phone number with no match in the Wireless Block file and no hit in the Port file would indicate a landline number.

50.  All others (i.e. phone numbers with any hit in the Port file) would be processed further by comparing the date of the call to the date of the port(s) for that phone number in the Port file.

51.  This would be done by processing each record of a port for the phone number (ports both wireless-to-landline and landline-to-wireless) in chronological order until the line status as cell or non-cell is determined in the appropriate time period for each call to that number.

---

15.  Id., 87:24-89:16, 90:7-16, 90:22-91:7, 91:13-92:1, 92:13-93:16, 93:23-94:4, 95:9-21.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Obtaining Subscriber/User Data

52. With regard to identifying the subscriber to cell phone to which "wrong number" calls were placed, those subscribers can be identified with data from the telephone carriers for those phone numbers.

53. This is not merely hypothetical. I have used data provided by subpoena from multiple phone carriers in the past to identify class members.

### *Carrier Subpoena Responses*

54. When asking for subscriber data for a list of phone numbers (including historical subscriber data), larger carriers such as AT&T have dedicated teams with automated systems that will produce the desired information automatically and efficiently. Because these large carriers have accordingly large market share (the top 7 carriers have over 90% of the market), data can be obtained for the vast majority of phone numbers efficiently.

55. Based on my experience I anticipate no significant obstacles in logistics or feasibility in obtaining the subscriber data from any of the carriers at issue in this case.

### *Resellers*

56. Carriers which resell another carrier's service (known as Mobile Virtual Network Operators or "MVNOs") present no obstacle to identifying the subscribers.

57. In other cases I have worked on, there has been no problem with MVNOs and retrieving subscriber information for numbers that have been used by MVNOs. Indeed, I have worked on TCPA cases involving calls to land line numbers (where, unlike cell phone numbers, there are many more small resellers and competitive local exchange carriers ("CLECs") where subpoenas to over 100 carriers were involved. This presents no difficulty as I can aggregate data from 100 carriers just as easily as from 3 carriers.

58. Finally, even if the facilities-based carrier (MNO as opposed to a MVNO) like Verizon did not have access to the subscriber data for some small portion of numbers being used by an MVNO like Virgin, the MVNO certainly does have that subscriber data.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## G&G Organization Notes Data

59.   If Orlando Health, Inc. ("OHI") were to produce the G&G Notes data that I understand
was uploaded into OHI's Affinity system, I can perform the foregoing analyses on the
G&G data in order to identify telephone numbers that received call(s) from G&G
intended for another person and telephone numbers for which there was a cease
contact or DNC request, including the subset calls placed after G&G received a DNC
request.  I would also be able to reliably identify the names and addresses that were
associated with those telephone numbers at the time of the calls, using common
evidence.

## Conclusions

60.   RMB, Inc. ("RMB") made a readily-identifiable number of calls to a readily-identifiable
number of unique telephone numbers which were cellular phone numbers at the time
of the call(s).

61.   Using materials RMB has already produced and either detail dialer records or Notes
data I understand RMB possesses, it is possible to identify each of the individual
telephone numbers that received call(s) from RMB intended for another person
("wrong number" calls) and telephone numbers for which there was a cease contact
or do not call ("DNC") request, including the subset calls placed after RMB received
such a request.

62.   Using either detail dialer records or Notes data I understand RMB possesses, it is also
possible to reliably identify the verified contact calls (i.e. prerecorded message calls)
and predictive dialer calls to those telephone numbers, in addition to the date of each
call.

63.   It is administratively feasible to reliably identify the names and addresses that were
associated with these telephone numbers at the time of the calls made by RMB, using
common evidence, as well as confirm the status of each phone number as a cellular
number at the time of each call.

64.   I can conduct a similar analysis of calls made by G & G Organization, LTD, d/b/a PFS
Group ("G&G") if G&G were to produce the appropriate data as I describe in this
report.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

65.  The facts, conclusions, and opinions stated herein are made to a reasonable degree of scientific certainly based upon examination of the information cited herein.  The principles and methods I have used are reliable, repeatable, and generally accepted. To the extent any portion of this report is based on limited information or where further analysis, testimony, opinions, or information are provided, the contents of this report are subject to revision and supplementation.



Robert Biggerstaff, CCE

February 22, 2019

Cert. No. 1360

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Table of Exhibits

1.    Results of Analysis of RMB's Aggregate Call Data

## Appendices

1.    Rule 26 caselist and resume.

EXPERT REPORT OF ROBERT BIGGERSTAFF
MORGAN V. ORLANDO HEALTH, INC., ET AL.

FEBRUARY 22, 2019
PAGE 18 OF 29

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 1

---

**Legend** to Exhibit 1
(applies to all pages)

**Phone**: Data column from RMB 000230 containing the associated phone number.

**WN Date:** Data column from RMB 000230 containing the date flag for Phone was changed from an * to a B

**DNC Date:** Data column from RMB 000230 containing the date flag for Phone was changed from an * to a !

**PD Calls:** Data column from RMB 000230 containing the number of predictive dials made to Phone while the flag for Phone was set to an *.

**Robo Calls:** Data column from RMB 000230 containing the number of verified contacts dials made to Phone while the flag for Phone was set to an *.

**WN tuples:** Analysis based on records with a wrong number notation date and either dialer or recorded calls.  Data is aggregated on a tuple of Phone + DBLAST + DBFIRST.

**DNC tuples:** Analysis based on records with a DNC notation date and either dialer or recorded calls.  Data is aggregated on a tuple of Phone + DBLAST + DBFIRST.

---

EXPERT REPORT OF ROBERT BIGGERSTAFF
MORGAN V. ORLANDO HEALTH, INC., ET AL.

FEBRUARY 22, 2019
PAGE 19 OF 29

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Home Phone analysis (DU68001)

| Phone | WN Date | DNC Date | PD Calls | Robo Calls |
| ------------- | ------------- | ------------- | ------------- | -------------- |
| DU68001 | DU81004 | DU81005 | DU81015 | DU81014 |

**WN tuples-----------------**

    8,683 records with DU81004 date (WN).

    7,929 unique tuples with DU81004 date (WN).

    6,212 unique tuples with DU81004 date and PD calls.

  104,281 total PD calls to those tuples.

    3,943 unique tuples with DU81004 date and Robo calls.

  19,308 total Robo calls to those tuples.

**DNC tuples-----------------**

    233 records with DU81005 date (DNC).

    195 unique tuples with DU81005 date (DNC).

    122 unique tuples with DU81005 date and PD calls.

  2,066 total PD calls to those tuples.

    120 unique tuples with DU81005 date and Robo calls.

    557 total Robo calls to those tuples.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## RP Phone analysis (DU68002)

| Phone | WN Date | DNC Date | PD Calls | Robo Calls |
| ------------- | ------------- | ------------- | ------------- | ------------- |
| DU68002 | DU81008 | DU81009 | DU81019 | DU81018 |

WN tuples-----------------

   450 records with DU81008 date (WN).
   390 unique tuples with DU81008 date (WN).

   288 unique tuples with DU81008 date and PD calls.
 4,349 total PD calls to those tuples.

   187 unique tuples with DU81008 date and Robo calls.
   836 total Robo calls to those tuples.

DNC tuples-----------------

   17 records with DU81009 date (DNC).
   15 unique tuples with DU81009 date (DNC).

   8 unique tuples with DU81009 date and PD calls.
   75 total PD calls to those tuples.

   8 unique tuples with DU81009 date and Robo calls.
   24 total Robo calls to those tuples.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## POE Phone analysis (DU68025)

| Phone | WN Date | DNC Date | PD Calls | Robo Calls |
| ------------- | ------------- | ------------- | ------------- | ------------- |
| DU68025 | DU81023 | DU81024 | DU81034 | DU81022 |

WN tuples-----------------

    18 records with DU81023 date (WN).
    18 unique tuples with DU81023 date (WN).

    3 unique tuples with DU81023 date and PD calls.
    43 total PD calls to those tuples.

    2 unique tuples with DU81023 date and Robo calls.
    6 total Robo calls to those tuples.

DNC tuples-----------------

    9 records with DU81024 date (DNC).
    5 unique tuples with DU81024 date (DNC).

    2 unique tuples with DU81024 date and PD calls.
    14 total PD calls to those tuples.

    3 unique tuples with DU81024 date and Robo calls.
    3 total Robo calls to those tuples.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Spouse POE Phone analysis (DU68026)

| Phone | WN Date | DNC Date | PD Calls | Robo Calls |
|-------|---------|----------|----------|------------|
| DU68026 | DU81027 | DU81028 | DU81038 | DU81027a |

WN tuples-----------------

   0 records with DU81027 date (WN).
   0 unique tuples with DU81027 date (WN).

   0 unique tuples with DU81027 date and PD calls.
   0 total PD calls to those tuples.

   0 unique tuples with DU81027 date and Robo calls.
   0 total Robo calls to those tuples.

DNC tuples-----------------

   0 records with DU81028 date (DNC).
   0 unique tuples with DU81028 date (DNC).

   0 unique tuples with DU81028 date and PD calls.
   0 total PD calls to those tuples.

   0 unique tuples with DU81028 date and Robo calls.
   0 total Robo calls to those tuples.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## NOK Phone analysis (DU68013)

| Phone | WN Date | DNC Date | PD Calls | Robo Calls |
| ------------- | ------------- | ------------- | ------------- | ------------- |
| DU68013 | DU81031 | DU81032 | DU81042 | DU81041 |

WN tuples----------------

141 records with DU81031 date (WN).
141 unique tuples with DU81031 date (WN).

88 unique tuples with DU81031 date and PD calls.
506 total PD calls to those tuples.

82 unique tuples with DU81031 date and Robo calls.
181 total Robo calls to those tuples.

DNC tuples-----------------

16 records with DU81032 date (DNC).
15 unique tuples with DU81032 date (DNC).

6 unique tuples with DU81032 date and PD calls.
33 total PD calls to those tuples.

6 unique tuples with DU81032 date and Robo calls.
10 total Robo calls to those tuples.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Phone 1 analysis (DU68020)

| Phone | WN Date | DNC Date | PD Calls | Robo Calls |
| ------------- | ------------- | ------------- | ------------- | ------------- |
| DU68020 | DU81104 | DU81105 | DU81115 | DU81114 |

WN tuples-----------------

   23 records with DU81104 date (WN).
   23 unique tuples with DU81104 date (WN).

   11 unique tuples with DU81104 date and PD calls.
   69 total PD calls to those tuples.

   12 unique tuples with DU81104 date and Robo calls.
   39 total Robo calls to those tuples.

DNC tuples-----------------

   4 records with DU81105 date (DNC).
   4 unique tuples with DU81105 date (DNC).

   2 unique tuples with DU81105 date and PD calls.
   34 total PD calls to those tuples.

   1 unique tuples with DU81105 date and Robo calls.
   1 total Robo calls to those tuples.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Phone 12 analysis (DU68042)

| Phone | WN Date | DNC Date | PD Calls | Robo Calls |
|-------------|-------------|-------------|-------------|-------------|
| DU68042 | DU81108 | DU81109 | DU81119 | DU81118 |

WN tuples-----------------

    19 records with DU81108 date (WN).
    18 unique tuples with DU81108 date (WN).

    4 unique tuples with DU81108 date and PD calls.
    52 total PD calls to those tuples.

    3 unique tuples with DU81108 date and Robo calls.
    17 total Robo calls to those tuples.

DNC tuples-----------------

    3 records with DU81109 date (DNC).
    3 unique tuples with DU81109 date (DNC).

    0 unique tuples with DU81109 date and PD calls.
    0 total PD calls to those tuples.

    0 unique tuples with DU81109 date and Robo calls.
    0 total Robo calls to those tuples.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Cell 2 analysis (DU68043)

| Phone | WN Date | DNC Date | PD Calls | Robo Calls |
|-------------|-------------|-------------|-------------|-------------|
| DU68043 | DU1123 | DU81124 | DU81134 | DU81122 |

WN tuples-----------------

    72 records with DU1123 date (WN).
    69 unique tuples with DU1123 date (WN).

    40 unique tuples with DU1123 date and PD calls.
176 total PD calls to those tuples.

    28 unique tuples with DU1123 date and Robo calls.
    58 total Robo calls to those tuples.

DNC tuples-----------------

    8 records with DU81124 date (DNC).
    8 unique tuples with DU81124 date (DNC).

    2 unique tuples with DU81124 date and PD calls.
    4 total PD calls to those tuples.

    2 unique tuples with DU81124 date and Robo calls.
    2 total Robo calls to those tuples.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Cell analysis (DU68044)

| Phone | WN Date | DNC Date | PD Calls | Robo Calls |
| ------------- | ------------- | ------------- | ------------- | ------------- |
| DU68044 | DU81127 | DU81128 | DU81138 | DU81137 |

WN tuples-----------------
    68 records with DU81127 date (WN).
    65 unique tuples with DU81127 date (WN).

    5 unique tuples with DU81127 date and PD calls.
    41 total PD calls to those tuples.

    4 unique tuples with DU81127 date and Robo calls.
    28 total Robo calls to those tuples.

DNC tuples-----------------
    10 records with DU81128 date (DNC).
    10 unique tuples with DU81128 date (DNC).

    0 unique tuples with DU81128 date and PD calls.
    0 total PD calls to those tuples.

    0 unique tuples with DU81128 date and Robo calls.
    0 total Robo calls to those tuples.

PROPRIETARY AND CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## APPENDIX 1

## Rule 26 List of Robert Biggerstaff
## Expert Testimony for Previous 4 Years

**1.** A Aventura v. Tankless Water, No. 2009 CA 023494 (Fla. Cir.)
**2.** Braver v. Northstar, No. 17-cv-00383 (W.D. Okla.)
**3.** Brian Keim v. ADF Midatlantic, LLC, et al., No. 12-cv-80577 (S.D. Fla)
**4.** Brodsky vs Kaiglar, No. 08 CH 44036 (Ill. Cir.)
**5.** Buja v. Novation, No. 15-CV-81002 (S.D. Fla)
**6.** Central Alarm v. BFS, No. 14-cv-14166 (E.D. Mich.)
**7.** Connelly v. Hilton Grand Vacations, No. 12-CV-00599 (S.D. Cal.)
**8.** Cook v. PRA, No. 16-cv-673 (M.D. Fla.)
**9.** CVS v. Mildon Bus Lines, No. 09-cv-01572 (W.D. Pa.)
**10.** Daisy, Inc. v. Pollo Operations, Inc., No. 14-cv-564 (M.D. Fla.)
**11.** E&G v SemaConnect, No. 17-cv-2774 (S.D.W.Va.)
**12.** E&G v. Mount Vernon, No. 17-CV-00318 (D.SC)
**13.** Etter v. Allstate, No. 17-cv-00184 (N.D. Cal. Cal.)
**14.** Evanston v. Poolman of Wisconsin, No. 15-cv-422 (N.D. Ill.)
**15.** FBS v. All Plumbing, No. 2011 CA 9575 (D.C. Cir.)
**16.** Fellen v. RehabCare Group, Inc., No. 1:14-20039-CIV (S.D. Fla.)
**17.** Glen Ellen Pharm. v. Mayne Pharma, Inc., No. 16 CV 6654 (N.D. Ill.)
**18.** Gorss v. AT&T, No. 17-cv-00403 (D. Conn.)
**19.** Gorss v. Brigadoon, No. 16-cv-00330 (N.D. Indiana)
**20.** Gorss v. Lands End, No. 17-cv-00101 (D. Conn.)
**21.** Gorss v. Otis Elevators, No. 16-cv-01781 (D. Conn.)
**22.** Gorss v. Safemark, No. 6:16-cv-1638 (M.D. Fla.)
**23.** Gorss v. Sprint, No. 17-cv-05461 (D. Conn.)
**24.** Kaner v. Schiffman, No. 10-CA-001569 (Fla. Cir.)
**25.** Kinnamon v Ditech, No. 16-cv-646 (E.D. Mo.)
**26.** Lanteri v. CPA, No. 13-cv-01501 (S.D. Ind.)
**27.** Margulis v. Surrey Vacation Resorts, No. 14-cv-01131 (E.D. Mo.)
**28.** Medical & Chiro v eClinicalWorks, No. 15-cv-01023 (M.D. Fla.)
**29.** PHS v. Allscripts, No. 12-cv-03233 (N.D. Ill.)
**30.** PHS v. Dr. Diabetic, No. 12-CV-22330 (S.D. Fla.)
**31.** PHS v. Salix, No. 15-cv-00036 (N.D.N.C.)
**32.** Practice v. Groupe Cirque du Soleil America, Inc, No. 14-CV-02032 (N.D. Ill.)
**33.** Rhea Drugstore v. Smith & Nephew, No. 15-cv-02060 (W.D. Tenn.)
**34.** Sliwa v. Bright House, No. 16-cv-235 (M.D. Fla.)
**35.** True Health Chiropractic Inc. v. McKesson Corp., No. 13-cv-02219 (N.D. Cal.)
**36.** Zimmer v Integrated Pain, No. 14-CV-01121 (E.D. Mo.)

EXPERT REPORT OF ROBERT BIGGERSTAFF
MORGAN V. ORLANDO HEALTH, INC., ET AL.

FEBRUARY 22, 2019
PAGE 29 OF 29

# Robert R. Biggerstaff

POB 614
Mt. Pleasant, SC 29465

**EDUCATION**

**Clemson University**, Clemson, South Carolina. BS degree in Chemical Engineering, August 1987. Concentrations in Computer Science and English. Member of the *American Institute of Chemical Engineers.*

**PROFESSIONAL DEVELOPMENT**

Guest Lecturer, *Information Systems and Society,* Information Systems Management Program, Trident Technical College, Charleston, SC.

**TECHNICAL**

Well versed in a wide range of popular commercial software packages and operating systems; Intel based servers, Sun SPARCstations, IBM AS/400, and other RISC hardware, and most accessories, networks, and related standards. Expert in database design, optimization, and programming.  Many years of experience in advanced RDBMS development. Extensive experience in many multiuser/multitasking network operating systems and environments including Novell, major Linux/Unix variants, AIX, and Windows NT. Expert skills in design, installation, management, optimization, and troubleshooting of routed and switched multiprotocol WAN/LAN environments utilizing TCP/IP, IPX, SNA, and other protocols. Experienced with sniffers, protocol analyzers, packed level analysis, and other wireline management tools. Also experienced with PLC/DCS systems including Allen-Bradley and Fisher PROVOX, as well as other process control and laboratory instrumentation systems. Fluent in 16 programming languages including Perl, SQL, 'C', HTML, Java, Javascript, FoxPro, Fortran, PL-1, and Assembler.

**EXPERIENCE**
April 1992
to
Dec. 2003
(retired)

**Westvaco Corporation**, Charleston, SC. _Support Systems Engineer_

Duties include: Corporate level standards development, support, troubleshooting, and design of a multiprotocol production WAN/LAN infrastructure spanning 20 states with 70+ servers and 4000+ nodes utilizing TCP/IP, IPX, SNA, NetBIOS, and other protocols. Facilities and network security management.  End user support. Knowledgebase development and training of other administrators and support staff. Intranet content, policy, and infrastructure development. Cooperative policy development and implementation for facilities management, security, resource usage, data management, access control, performance monitoring, and other issues. Provide a critical technical advisory role and technology assessment to management for planning and decision making. Development of custom applications for RDBM, process control interfaces, mainframe data interfaces, process data manipulation, ISO 9002 certification requirements, environmental and other regulatory compliance. Custom SAP interfaces. Webmaster.

April 1988
to
April 1992

**Computer Support**, Greenville, SC / Charleston, SC. _Contract Analyst and Consultant_

Providing a wide range of technical services to clients on both short and long term assignments and projects. A partial list of services provided:

- System design, development, and installation. Network design and installation.

- Needs analysis and feasibility studies.

- Security Analysis

- Teaching, training, and instruction in hardware and commercial software packages.

- Custom programming of RDBMS for case management, inventory control, order entry/processing, process control, point-of-sale, payroll, graphics, and other applications.

Significant projects included:

- Development of custom SQL-based RDBMS for base housing maintenance at Fort Bragg utilizing AIX and UNIX with TCP/IP networking for PS/2 to AS/400 data interchange.

- Development team of an advanced minefield evaluation system for US Navy (COMMINEWARCOM) utilizing embedded SQL/C (Informix) and X-windows GUI.

- Development of onboard computer systems interface for Kodak Auxiliary Services interfacing ship's mainframe data systems to photo concessionaire's systems. Development of user interface and extensive application for process and control systems.

- Development of advanced formulary information management system including production capacity scheduling, performance monitoring, and sophisticated information management.

January 1986 to April 1988

**North American Garment Finishers Inc. (NAGFI),** Greenville, SC. *Director of Computer Operations*

Reporting directly to Sr. VP of Operations. Responsible for all computer systems, network design and operation, hardware installation and maintenance, and applications development. Major projects included developing production scheduling and capacity planning computer models, inventory control for JIT fulfillment, and database development for proprietary formularies. Training, supervision, and management of DP staff.

*Security clearances and references available upon request*